# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG A HENISE, | : | CIVIL NO. 1:10-CV-1775 |
| | : | |
| Plaintiff, | : | ( Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| MARY SABOL, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.     Statement of Facts and of the Case.

This case presents a parable concerning the procedural problems and pitfalls of *pro se* litigation.

This is a *pro se* civil rights action brought by Craig Henise, a state inmate who is currently confined at the York County Prison. Henise commenced this action by filing a complaint on August 24, 2010. (Doc. 1.) Henise's original complaint was a 28-page document which named fourteen defendants. These defendants included the York County Prison, Warden Mary Sabol, Deputy Warden Clair Doll, and four York County Prison correctional staff, John Daryman, Steven Bolding, Jose Francisco and Jay Lawrence. In addition, Henise named a number of prison medical service providers as defendants. These medical defendants include Chris Jenson and Jen Miosi, who were identified as supervisors at Prime Care, the medical contractor for the prison. In addition, one physician, Dr. Pamela Rollings, and two physician

assistants, Toby Catone and Robin Rochow, were also named by Henise as defendants. Henise then went on to name Prime Care's Director of Mental Health, Patrick Gallagher, as a defendant. Finally, Henise recited in his initial complaint that a communications company, Global Tele-Link was also a defendant in this action.(Id.)

After naming this wide array of the defendants, the complaint set forth a lengthy, somewhat confusing, but conversational, factual narrative. This narrative alleged that Henise has been incarcerated at York County Prison since sometime in 2008, and indicated that Henise suffers from a series of physical, emotional and psychological ailments.

Henise then made a number of factual assertions concerning the conduct of correctional staff at the prison. Notably absent from these factual recitals were any factual allegations relating to two of the correctional defendants named in Henise's complaint, Warden Sabol or Deputy Warden Doll, who were apparently named in the complaint simply because they oversee the prison's operations. Instead, according to Henise's complaint, sometime in 2008 he became embroiled in an argument with other correctional staff. This argument culminated when four correctional staff–defendants Daryman, Bolding, Lawrence and Francisco– handcuffed Henise, removed him from his cell and transferred him to another cell. In the course of this 2008 prisoner transfer Henise alleged that he was shoved by defendant Bolding, and physically abused by

defendants Lawrence and Francisco. According to Henise, defendant Daryman, who was a prison supervisor, was present during this 2008 incident but failed to intervene and protect Henise. (Id.)

While Henise alleged that these events occurred in 2008, he candidly acknowledges that he took no action to grieve this conduct using the prison's internal grievance process for two years, waiting until July 30, 2010, to file a grievance relating to these matters. (Id., p.11.) That grievance was then denied by prison officials since it was untimely under prison rules which require inmates to file grievance within six months of the events which are the subject of their complaints. ( Doc. 27. )

Having leveled these factual allegations against the corrections defendants, Henise then lodged a series of complaints against the prison's medical service providers. Once again, the complaint was notable in that it did not describe any direct personal involvement by four of the named defendants– Chris Jenson, Jen Miosi, and Patrick Gallagher and Robin Rochow–in any alleged acts of wrongdoing. Thus, Henise appears to have premised the individual liability of many of these defendants solely upon their supervisory status at Prime Care.

As for the remaining medical defendants, Henise recited a complex medical history involving an array of medical and emotional concerns. He then described a series of meetings with medical personnel, and detailed various treatments and medications he has received. In the course of this litany of medical care, Henise

alleged that there was a brief delay in the Spring of 2010 in securing approval to provide him with one of his many medications, a specific medication of a bi-polar disorder. With respect to this delay, Henise's complaint recited that he met with defendants Rollings and Catone concerning this matter on several occasions, and they ultimately secured this specific medication for him. Nonetheless, Henise alleged that their medical response to his needs was inadequate, and further claimed that during arguments he had with these defendants concerning his treatment the defendants raised their voices. Henise contended that by raising their voices the defendants violated the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. §201, note, a federal healthcare statute, by publicly disclosing patient information when they shouted replies to him during these arguments.

After filing this initial complaint on August 24, 2010, Henise sought leave to amend his complaint on October 18, 2010. (Doc. 18.) The Court granted this motion on October 21, 2010, but mindful of the fact that once an amended complaint is filed the original complaint is considered a nullity, we instructed Henise that:

> The plaintiff shall file an amended complaint on or before **November 10, 2010**. Any amended complaint shall be complete in all respects. It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. Any amended complaint shall be titled as an amended complaint and shall contain the docket number of this case.

(Doc. 23.)

Regrettably, Henise did not comply with this direction. Instead, on October 29, 2010, Henise filed a document, styled amended complaint (Doc. 25), which contained no factual allegations whatsoever relating to any corrections defendants, set forth no allegations relating to events in 2008, and simply repeated Henise's complaints that medical care providers had violated HIPAA by shouting at him during argument concerning the treatment he was receiving from them. (Id.)

The various medical and corrections defendants who have been served in this case have now all filed motions to dismiss this action. (Docs. 26, 31 and 35.) These motions to dismiss raise a series of threshold objections to Henise's complaint, including assertions that Henise has failed to exhaust his administrative remedies, and has failed to adequately state claims upon which relief may be granted. The parties have fully briefed these motions (Docs. 27, 33, and 36), and Henise has filed a document, styled motion of consolidated response to the defendants' motions to dismiss (Doc. 40), which is in reality not a motion, but rather a response in opposition to the defendants' motions.[1] Therefore, this matter is now ripe for resolution.

For the reasons set forth below, it is recommended that these motions to dismiss be granted, and that a number of these claims be dismissed with prejudice, but that the

---

[1] In a commendable display of candor in this response Henise advises the court in part that "Your honorable judge I'm just winging this". (Doc. 40, p.3.)

case be dismissed without prejudice to Henise endeavoring to address the deficiencies in his current complaint.

## II.     Discussion

### A.     Rule 12(b)(6)– The Legal Standard.

The defendants have filed  motions to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This Court also has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." When ruling upon a motion to dismiss under Rule 12(b)(6), a court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir.

2005)).  Although the court is generally constrained in its review to the facts alleged in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require that a complaint provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The plaintiff must allege facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a) (providing that a complaint must include a short and plain statement of the claim showing that the pleader is entitled to relief); Twombly, 550 U.S. at 555 (holding that plaintiffs are required to allege facts sufficient to "raise a right to relief above the speculative level").

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in

> Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which

relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action. Having conducted this review we find that Henise's pleadings are fatally flawed in a series of respects, as set forth below:

### B.    Henise's Amended Complaint Renders His Initial Complaint a Legal Nullity and Compels the Dismissal of Those Claims and Defendants That Are Set Forth Only in The Original Complaint

At the outset, Henise's approach to this litigation has resulted in him perhaps inadvertently abandoning a series of claims which he made in this lawsuit. Despite our warning to Henise that "[a]ny amended complaint shall be complete in all respects" (Doc. 23), Henise has filed an amended complaint, that does not include many fo the allegations made in his original complaint. This failure to follow the court's instruction that  "[a]ny amended complaint shall be complete in all respects" has substantive significance for Henise since, as a matter of law, an amended complaint takes the place of the original complaint, effectively invalidating the original complaint. Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay

Energy Co.), 226 F.3d 160, 162 (2d Cir. 2000) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect"); see 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("A pleading that has been amended … supersedes the pleading it modifies…. Once an amended pleading is interposed, the original pleading no longer performs any function in the case….").

Because Henise did not follow our instructions, and did not file a comprehensive amended complaint, he now has effectively abandoned many of the claims that were only set forth in that original complaint, including all of the claims against the corrections defendants arising out of alleged misconduct in 2008. Therefore, these claims and defendants are entitled to be dismissed from this lawsuit since Henise did not include them in his amended complaint. However, we recognize that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Given that Henise's failure to include the originally-pled allegations in his amended complaint may have been the result of confusion on his part, it is recommended that these allegations in the original complaint be deemed abandoned by the filing of Henise's amended complaint, and the original complaint

should be dismissed, but that Henise be given leave of court to file a second amended complaint, which would include all allegations which he wishes to pursue.

**C.** **Defendants Sabol, Doll, Gallagher, Jenson, Miosi and Rochow Are Entitled to Be Dismissed From This Lawsuit**

Henise's complaints also fail to allege well-pleaded facts giving rise to liability against at least six of the individuals named as defendants in this case– Warden Sabol, Deputy Warden Doll, Chris Jenson, Patrick Gallagher, Robin Rochow, and Jen Miosi. As to these defendants, Henise's complaints violate the pleadings rules prescribed by the United States Supreme Court in Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009) in that the complaints only contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a matter of law] do not suffice." Id. at 1949.

In fact, as to defendants Sabol, Doll, Gallagher, Jenson, Miosi, and Rochow, the complaints do not even contain "[t]hreadbare recitals of the elements of a cause of action". Rather, these defendants are not mentioned in any meaningful way anywhere in the body of these complaints beyond being listed in the caption of this case. (Docs. 1 and 25.) This complete failure to articulate in the complaint a factual basis for holding these defendants accountable for some violation of the constitution now compels dismissal of these defendants from this lawsuit. See Thomas v. Conway, No.

04-1137, 2005 WL 2030304 (M.D. Pa. July 21, 2005)(failure to name defendant in body of complaint compels dismissal).

Moreover, with respect to the supervisory defendants named by Henise in these complaints it is well-settled that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the United States Supreme Court has observed in underscoring this principle:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1948 (2009).

In this case, Henise has alleged no such "individual actions" on the part of defendants Sabol, Doll, Gallagher, Miosi, and Jenson, but rather seeks to hold them liable solely as supervisors under a *respondeat superior* theory of liability. This he cannot do under the law. Therefore, these supervisory defendants should be dismissed from this case.

### D. Henise's Claims Against Defendants Daryman, Bolding, Francisco and Lawrence Are Barred Due to The Plaintiff's Failure to Exhaust Administrative Remedies In The Prison

In addition, the corrections defendants seek dismissal of this complaint because of Henise's acknowledged failure to exhaust his administrative remedies with respect to this complaint. This failure to avail himself of these grievance procedures may have substantive significance for Henise since the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including Eighth Amendment claims like those advanced here. See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ...

Nyhuis v. Reno, 204 F.3d 65, 75 -76 (3d Cir. 2000)(citations omitted)

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding

that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

In this case, Henise has acknowledged in his complaint that he failed to timely pursue administrative grievances with respect to the 2008 allegations that he levels against defendants Daryman, Bolding, Francisco and Lawrence. As to these defendants, Henise candidly acknowledges that he took no action to grieve their 2008 conduct using the prison's internal grievance process for two years, waiting until July 30, 2010, to file a grievance relating to these matters. (Doc. 1, p.11.) That grievance was then denied by prison officials since it was untimely under prison rules which require inmates to file grievances within six months of the events which are the subject of their complaints. ( Doc. 27.) This failure to pursue institutional grievance procedures in a timely and proper fashion now bars Henise from bringing an action against these defendants for this 2008 incident. See, e.g., Booth v. Churner, 206 F.3d

289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).[2]

### E. Henise May Not Bring a Private Cause of Action Against the Medical Defendants Under HIPAA

Henise's complaints against the medical defendants are also flawed in several fundamental ways. For example, in his complaint Henise advances a novel claim to a private right of action under the Health Insurance Portability and Accountability Act (HIPAA). Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. §201, note. Observing that the Act protects the privacy of patient information, Henise alleges that when he engaged in arguments with his health care providers, they violated the statute but shouting at him, thereby publicly disclosing health information.

This novel claim warrants only brief consideration The courts that have examined HIPAA have generally concluded "that HIPAA does not create such a private right [of action for individual plaintiffs]. See Rigaud v. Garofalo, 2005 WL 1030196 (E.D.Pa.); Dominic J. v. Wyoming Valley West High School, 362 F.Supp.2d 560 (M.D.Pa.2005); O'Donnell v. Blue Cross Blue Shield of Wyoming, 173 F.Supp.2d 1176 (D.C.Wyo.2001); Brock v. Provident Am. Ins. Co., 144 F.Supp.2d 652

---

[2]We note that the medical defendants, who are alleged to have improperly treated Henise in 2010 also assert that Henise has failed to exhaust his prison grievances. However, with respect to this claim, we find the record too confused and incomplete to allow us to reach any judgment regarding whether these medical claims have been properly exhausted through the internal prison grievance system.

(N.D.Tex.2001); <u>Means v. Indep. Life and Accident Insurance Co.</u>, 963 F.Supp. 1131

(M.D.Ala.1997); <u>Wright v. Combined Insurance Co. of America</u>, 959 F.Supp. 356

(N.D.Miss.1997)." <u>Carney v. Snyder</u>, No. 06-23,  2006 WL 2372007, *4 (W.D.Pa

Aug. 15, 2006). Therefore, Henise simply may not maintain a private HIPAA claim

against these defendants arising out of his shouted exchange with them.

**F.      Henise's Current Complaints Do Not Adequately Plead An Eighth Amendment "Deliberate Indifference" Claim in a Prison Medical Context.**

Liberally construed, Henise's complaints allege that health care providers

violated his rights under the Eighth Amendment to the United States Constitution by

displaying "deliberate indifference" to his medical needs. Henise faces an exacting

burden in advancing this Eighth Amendment claim against prison officials in their

individual capacities. To sustain such a claim, Henise must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

<u>Beers-Capitol v. Whetzel,</u>256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Henise is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d

192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional

judgment is never deliberate indifference. <u>See e.g.</u> <u>Brown v. Borough of</u> <u>Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; <u>see, e.g.</u>, <u>Ham v.</u> <u>Greer</u>, 269 F. App'x 149 (3d Cir. 2008); <u>James v. Dep't of Corrections</u>, 230 F. App'x 195 (3d. Cir. 2007); <u>Gillespie v. Hogan</u>, 182 F. App'x 103 (3d Cir. 2006); <u>Bronson v.</u> <u>White</u>, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); <u>Gindraw v.</u> <u>Dendler</u>, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of

an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same);

Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

In this case, while Henise is plainly dissatisfied with the care he has received, his pleadings are filled with references to appointment, treatments, medications, and examinations he has received. Where, as here, a complaint contains numerous factual recitals describing on-going care, those recitals rebut a claim of deliberate indifference to serious medical needs. Furthermore, the gist of his complaint relates to what Henise describes as disagreements and argument between himself and his care-givers regarding the proper course of treatment for his various maladies. Where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, it is well-settled that an inmate's complaint will fail as a constitutional claim under § 1983. See e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F. A pp'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F. App'x 324 (3d Cir. 2007)(same). Accordingly, on the facts as currently pleaded

by the plaintiff we cannot say that Henise has described deliberate indifference to his medical needs, and these claims should be dismissed.

### G. The York County Prison Should Be Dismissed As a Defendant

Furthermore, with respect to an institutional defendant like the York County Prison, it is clear that a county cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. See Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978). Instead, with respect to such institutional defendants it is clear that: "[a plaintiff] must demonstrate that the violation of his rights was caused by either a policy or a custom of the [county]. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996)." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). See Malles v. Lehigh County , 639 F. Supp.2d 566 (E.D. Pa. 2009).

As the Malles Court stated:

> According to the teaching of Monell v. Department of Social Services, 436 U.S. 658(1978), [a] County "can be sued directly under § 1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. Monell, 436 U.S. at 690.

Id. at 576.

In this case Henise has not pleaded or proven that a policy or custom of the county prison caused the alleged violation of civil rights. Nor has the Plaintiff shown

that the county failed to train its officers resulting in alleged brutality against inmates. In the absence of such pleading and proof Henise's claim against the county prison as an institutional defendant fails.

### G.     The Claims Against Global Tele-Link Should be Dismissed

There remains one defendant,  Global Tele-Link, who has not yet been served. Our review of Henise's pleadings, however, leads us to conclude that this defendant should also be dismissed from this lawsuit. Dismissal of  Global Tele-Link  is proper here for several reasons.

First, this defendant was only named in Henise's original complaint, which is now a legal nullity given the filing of an amended complaint which contained no allegations against  Global Tele-Link. See Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.), 226 F.3d 160, 162 (2d Cir. 2000) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect"); see 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("A pleading that has been amended … supersedes the pleading it modifies…. Once an amended pleading is interposed, the original pleading no longer performs any function in the case….").

Second, it is well-established that § 1983 does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply

serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

Moreover, any civil rights claims brought under §1983 must allege and prove that the defendant was acting under color of law when that defendant allegedly violated the Plaintiff's rights. Thus, it is essential to state a claim under §1983 that the plaintiff plead and prove facts showing that the defendants were state actors at the time of the events alleged in the complaint. To the extent that a complaint seeks to hold private parties liable for civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically require a showing that the defendants are state actors. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

In this case, Henise does not allege facts which demonstrate either a violation fo some constitutional right by Global Tele-link of facts which show that this company should be considered a state actor for purposes of civil rights liability. The failure to

plead, or prove, such facts is fatal to Henise's claims against this communications company.

We recognize, however, that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004). Since the *pro se* complaint does not comply with pleading rules, and does not contain sufficient factual recitals to state a claim upon which relief may be granted, or otherwise may seek relief which cannot be afforded to the plaintiff, these allegations should be dismissed under 28 U.S.C. § 1915A, and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dismissal of the legally insufficient HIPAA claim with prejudice is appropriate. Moreover, the claims against correctional staff arising out of the 2008 incident, which Henise failed to properly grieve through this prison system should also be dismissed with prejudice.

As for the remaining claims, it is recommended that the Court provide the plaintiff with an opportunity to correct the many deficiencies in the *pro se* complaint, by dismissing these remaining allegations without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

## III.   RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motions to dismiss (Docs. 26, 31, and 35) be GRANTED, and that the following claims be dismissed with prejudice: (1)The legally insufficient HIPAA claim, and (2) the claims against correctional staff arising out of the 2008 incident, which Henise failed to properly grieve through this prison system .

As for the remaining claims, it is recommended that the Court provide the plaintiff with an opportunity to correct the many deficiencies in the *pro se* complaint, by dismissing these remaining allegations without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

Given these recommendations, Henise's document styled motion of consolidated  response to the defendants motions to dismiss (Doc. 40), which is in reality not a motion, but rather a response in opposition to the defendants' motions, should be DISMISSED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the

basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 14th day of December, 2010.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge