# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG A HENISE, | : | CIVIL NO. 1:10-CV-1775 |
| Plaintiff, | : | ( Chief Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| MARY SABOL, et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case.

This case presents a parable concerning the continuing procedural problems and pitfalls of *pro se* litigation.

This is a *pro se* civil rights action brought by Craig Henise, a state inmate who is currently confined at the York County Prison. Henise commenced this action by filing a complaint on August 24, 2010. (Doc. 1.) Henise's original complaint was a 28-page document which named fourteen Defendants. These Defendants included the York County Prison, Warden Mary Sabol, Deputy Warden Clair Doll, and four York County Prison correctional staff, John Daryman, Steven Bolding, Jose Francisco and Jay Lawrence. In addition, Henise named a number of prison medical service providers as Defendants. These medical Defendants include Chris Jenson and Jen

Miosi, who were identified as supervisors at Prime Care, the medical contractor for the prison. Furthermore, one physician, Dr. Pamela Rollings, and two physician assistants, Toby Catone and Robin Rochow, were also named by Henise as Defendants. Henise then went on to name Prime Care's Director of Mental Health, Patrick Gallagher, as a Defendant. Finally, Henise recited in his initial complaint that a communications company, Global Tele-Link was also a Defendant in this action.(Id.)

After naming this wide array of the Defendants, the complaint set forth a lengthy, somewhat confusing, but conversational, factual narrative. This narrative alleged that Henise has been incarcerated at York County Prison since sometime in 2008, and indicated that Henise suffers from a series of physical, emotional and psychological ailments. Henise then made a number of factual assertions concerning the conduct of correctional staff at the prison. Notably absent from these factual recitals were any factual allegations relating to two of the correctional Defendants named in Henise's complaint, Warden Sabol or Deputy Warden Doll, who were apparently named in the complaint simply because they oversee the prison's operations. Instead, according to Henise's complaint, sometime in 2008 he became embroiled in an argument with other correctional staff. This argument culminated when four correctional staff–Defendants Daryman, Bolding, Lawrence and Francisco– handcuffed Henise, removed him from his cell and transferred him to another cell. In

the course of this 2008 prisoner transfer Henise alleged that he was shoved by Defendant Bolding, and physically abused by Defendants Lawrence and Francisco. According to Henise, Defendant Daryman, who was a prison supervisor, was present during this 2008 incident but failed to intervene and protect Henise. (Id.)

While Henise alleged that these events occurred in 2008, he candidly acknowledged that he took no action to grieve this conduct using the prison's internal grievance process for two years, waiting until July 30, 2010, to file a grievance relating to these matters. (Id., p.11.) That grievance was then denied by prison officials since it was untimely under prison rules which require inmates to file grievance within six months of the events which are the subject of their complaints. ( Doc. 27. ) Having leveled these factual allegations against the corrections Defendants, Henise then lodged a series of complaints against the prison's medical service providers. Once again, the complaint was notable in that it did not describe any direct personal involvement by four of the named Defendants– Chris Jenson, Jen Miosi, and Patrick Gallagher and Robin Rochow–in any alleged acts of wrongdoing. Thus, Henise premised the individual liability of many of these Defendants solely upon their supervisory status at Prime Care.

As for the remaining medical Defendants, Henise recited a complex medical history involving an array of medical and emotional concerns. He then described a series of meetings with medical personnel, and detailed various treatments and

medications he had received. In the course of this litany of medical care, Henise alleged that there was a brief delay in the Spring of 2010 in securing approval to provide him with one of his many medications, a specific medication of a bi-polar disorder. With respect to this delay, Henise's complaint recited that he met with Defendants Rollings and Catone concerning this matter on several occasions, and they ultimately secured this specific medication for him. Nonetheless, Henise alleged that their medical response to his needs was inadequate, and further claimed that during arguments he had with these Defendants concerning his treatment the Defendants raised their voices. Henise contended that by raising their voices the Defendants violated the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. §201, note, a federal healthcare statute, by publicly disclosing patient information when they shouted replies to him during these arguments.

After filing this initial complaint on August 24, 2010, Henise sought leave to amend his complaint on October 18, 2010. (Doc. 18.) The Court granted this motion on October 21, 2010, but mindful of the fact that once an amended complaint is filed the original complaint is considered a nullity, we instructed Henise that:

> The Plaintiff shall file an amended complaint on or before **November 10, 2010**. Any amended complaint shall be complete in all respects. It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. Any amended complaint shall be titled as an amended complaint and shall contain the docket number of this case.

(Doc. 23.)

Regrettably, Henise did not comply with this direction. Instead, on October 29, 2010, Henise filed a document, styled amended complaint (Doc. 25), which contained no factual allegations whatsoever relating to any corrections Defendants, set forth no allegations relating to events in 2008, and simply repeated Henise's complaints that medical care providers had violated HIPAA by shouting at him during argument concerning the treatment he was receiving from them. (Id.)

The Defendants filed motions to dismiss this action. (Docs. 26, 31 and 35.) These motions to dismiss raised a series of threshold objections to Henise's complaint, including assertions that Henise has failed to exhaust his administrative remedies, and had failed to adequately state claims upon which relief may be granted. The parties fully briefed these motions and Henise filed a document, styled motion of consolidated response to the Defendants' motions to dismiss (Doc. 40), which is in reality not a motion, but rather a response in opposition to the Defendants' motions

On December 14, 2010 we filed a report and recommendation (Doc. 41) which recommended that the Defendants' motions to dismiss be granted, and that the following claims be dismissed with prejudice: (1)The legally insufficient HIPAA claim, and (2) the claims against correctional staff arising out of the 2008 incident, which Henise failed to properly grieve through this prison system. As for the remaining claims, we recommended that the Court provide Henise with an opportunity

to correct the many deficiencies in the *pro se* complaint, by dismissing these remaining allegations without prejudice to one final effort by the Plaintiff to comply with the rules governing civil actions in federal court.

On January 6, 2011, the District Court entered an order adopting this report and recommendation, and directing Henise to file any amended complaint on or before February 22, 2011. (Doc. 44.) A copy of this order was mailed to Henise at the address provided to the Court by the Plaintiff, but has been returned as undeliverable. (Doc. 45.)

Henise's failure to inform the court of his change of address is a violation of the Court's standing practice order which was provided to Henise in August, 2010, at the outset of this litigation. (Doc. 2.) At the inception of this case, in its standing practice order this Court notified the Plaintiff of his obligations as a *pro se* litigant in a practice order, stating in clear and precise terms as follows:

> C. A Pro Se Plaintiff's Obligation to Inform the Court of Address Changes.
>
> A *pro* se plaintiff has the affirmative obligation to keep the court informed of his or her current address. If the plaintiff changes his or her address while this lawsuit is being litigated, the plaintiff shall immediately inform the court of the change, in writing. If the court is unable to communicate with the plaintiff because the plaintiff has failed to notify the court of his or her address, the plaintiff will be deemed to have abandoned the lawsuit.

(Doc. 2.)

Henise's failure to provide an accurate current mailing address plainly violates this Court's standing practice order, and warrants imposition fo the sanction prescribed by that order: "If the court is unable to communicate with the plaintiff because the plaintiff has failed to notify the court of his or her address, the plaintiff will be deemed to have abandoned the lawsuit." Henise has also violated the Court's January 6, 2011, order by failing to file an amended complaint by February 22, 2011, as directed by the Court.

Given these multiple defaults, it is recommended that Henise's complaint now be dismissed with prejudice.

**II.     Discussion**

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: " If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." F. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190. Recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiff, who has failed to abide by court orders and has now made communication by the Court with this party virtually impossible failing to provide an accurate mailing address.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. The Plaintiff's failures to communicate with the Court, comply with court orders, or provide a means for us to communicate with him, now delay the resolution of this action. In such instances, dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. The Plaintiff has now failed to timely file pleadings, and comply with orders of the Court, and we are utterly unable to communicate with the Plaintiff, whose whereabouts are unknown.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the Plaintiff. At this juncture, when the Plaintiff has failed to comply with instructions of the Court directing the Plaintiff to take specific actions in this case, the Court is compelled to conclude that the Plaintiff's

actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the Plaintiff's status as a *pro se* litigant severely limits the ability of the Court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the Plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The Plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal with prejudice remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, consideration of this factor cannot save the Plaintiff's case from dismissal. Indeed, this Court has already concluded that the plaintiff failed to state a valid cause of action, but permitted him one last opportunity to amend his pleadings, which he has now forfeited by failing to

abide by the filing deadline given to her by the Court. Therefore, in this case all of the Poulis factors call for dismissal of this case.

### III. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's complaint be dismissed with prejudice for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23rd day of February, 2011.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge